## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GLOBAL STRUCTURES, INC.,**

a New Mexico Corporation,

> Plaintiff/Counter Defendant,

**v.**                                                     **No. 08-CV-867 MCA/ACT**

**CONTINENTAL CASUALTY COMPANY,**

an Illinois corporation,

> Defendant/Counter Claimant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant *Continental Casualty Company's Motion For Summary Judgment On Coverage* [Doc 20], *Plaintiff's Motion For Partial Summary Judgment On The Issue Of Coverage* [Doc 23], and Plaintiff's *Request For Oral Argument On Cross Motions For Summary Judgment* [Doc 37].  [Doc 23]  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's Motion [Doc 20] and denies Plaintiff's Motions [Doc 23; Doc 37].

I.      **BACKGROUND**

Global Structures, Inc. (GSI) is a licensed general contractor, who had an obligation to perform work at a particular jobsite.  In December 2006, GSI and J.R. Hale Contracting Company, Inc. (Hale) contracted for Hale to conduct demolition, earthwork, and asphalt paving operations at the jobsite.  Under the contract, Hale agreed to procure a comprehensive commercial general liability insurance policy.  Hale obtained a policy (the Policy) from Continental Casualty Company (Continental), and GSI and the jobsite owner were included as additional insureds under the Policy.

In July 2007, Hale completed the work, including the asphalt paving, and the paving was put to use.  A short time later, the asphalt paving exhibited damage in the form of ruts, cracks, and pavement shoves.  A consultant examined the damage and determined that it was the result of Hale's failure to comply with the mix design for the asphalt, as well as Hale's failure to lay the asphalt with adequate thickness.  The jobsite owner demanded that GSI replace the defective paving, and on November 27, 2007,  GSI tendered the claim to Hale and Continental.  After several communications between Continental and GSI, on June 5, 2008, Continental denied coverage.  GSI repeatedly requested reconsideration and eventually filed the instant suit against Continental.

The parties filed cross-motions for summary judgment on the issue of liability under the policy, [Docs 20, 23] and Plaintiff has requested oral argument on the motions [Doc 37].

II.     **ANALYSIS**

The sole dispute between the parties is the proper construction of the Policy.  This Court evaluates the terms of an insurance policy according to New Mexico law.  See Marathon Ashland Pipe Line LLC v. Maryland Casualty Co., 243 F.3d 1232, 1236 (10th Cir. 2001) (Marathon).  In New Mexico, "[a]n insurance claim arises from the policy language."  Economy Preferred Ins. Co. v. Jia, 2004-NMCA-076, ¶ 6, 135 N.M. 706, 92 P.3d 1280 (internal quotation marks and citation omitted) (Jia).  Thus, "[t]he first question in analyzing an insurance policy is whether the policy is ambiguous."  Bird v. State Farm Mut. Auto. Ins. Co., 2007-NMCA-088, ¶ 11, 142 N.M. 346, 165 P.3d 343.  When policy language is clear and unambiguous, New Mexico Courts "give effect to the contract and enforce it as written."  Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960.

Ambiguity, however, exists "if separate sections of the policy conflict, if the language may have more than one meaning, if the structure of the contract is not logical, or if a relevant matter of coverage is not explicitly addressed in the policy."  Bird, 2007-NMCA-088, ¶ 11.  As a matter of public policy, New Mexico courts construe ambiguities in favor of the insured.  See Ponder, 2000-NMSC-033, ¶ 26 ("[W]here the policy is found to be unclear and ambiguous, [t]he court's construction of an insurance policy will be guided by the reasonable expectations of the insured."  (second alteration in original) (internal quotation marks and citation omitted)).  Similarly, with regard to exclusions, "[i]t is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage."  Computer Corner, Inc. v. Fireman's Fund Ins. Co., 2002-NMCA-

054, ¶ 7, 132 N.M. 264, 46 P.3d 1264.  A Court "will not create ambiguity where none

exists, and an ambiguity does not exist merely because the parties hold competing

interpretations." Garcia v. Underwriters at Lloyd's London, 2007-NMCA-042, ¶ 14, 141

N.M. 421, 156 P.3d 712 (internal quotation marks and citation omitted).

## A.    Standard of Review

Under Fed.R.Civ.P. 56(c), the Court may enter summary judgment when the

motion papers, affidavits, and other evidence submitted by the parties show that no

genuine issue exists as to any material fact, and that the moving party is entitled to

judgment as a matter of law.  A "genuine issue" exists where the evidence before the

Court is of such a nature that a reasonable jury could return a verdict in favor of the

non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at

248.

The same standards apply when parties file cross-motions for summary judgment

or motions for partial summary judgment.  See Lenning v. Commercial Union Ins. Co.,

260 F.3d 574, 581 (6th Cir.2001) (cross-motions); Boyd v. Cinmar of Gloucester, Inc.,

919 F.Supp. 208, 208-09 (E.D.Va.1996) (motions for partial summary judgment).  The

filing of cross-motions does not necessarily mean that the matter can be resolved by a

summary judgment, nor does the denial of one party's cross-motion necessarily mean that

the other party's cross-motion will be granted.  See Atlantic Richfield Co. v. Farm Credit

Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir.2000).

In addition to accounting for which party files the motion, the procedure for granting summary judgment must account for which party bears the burden of proof at trial. When the movant is also the party bearing the burden of persuasion on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party. See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir.1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F.Supp. 387, 391 (D. Kan.1993). But when the movant does not bear the burden of proof as to the claim or defense at issue in the motion, then judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.1998).

Finally, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.**      **Policy Terms and the Parties' Arguments**

In order to understand the extent and limitations of the Policy, it is necessary to begin with its terms.  See Jia, 2004-NMCA-076, ¶ 6 ( "[A]n insurance claim arises from the policy language." (internal quotation marks and citation omitted)).  "J.R. Hale Contracting Co., Inc." is listed on the Declarations page  as the "Named Insured."  [Doc 54-2 at 5]  The Policy states that throughout, "the words 'you' and 'your' refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy."  [Id. at 75]  Further, "[t]he word 'insured' means any person or organization qualifying as such under Section II . . ."  [Id.]

Turning to Section II, the Policy explains that depending on the nature the "Named Insured," other people are also "insureds."  [Id. at 81-82]  For example, if the Named Insured is designated in the Declarations as an "individual," the Named Insured and the Named Insured's spouse "are insureds."  [Id. at 81]  If, however, the Named Insured is designated in the Declarations as "a partnership or a joint venture," the Named Insured is "an insured" and "[y]our members, your partners, and their spouses are also insureds . . . ."  [Id.]  The Policy additionally contains a "Separation of Insureds" provision, which provides as follows:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a.  As if each Named Insured were the only Named Insured; and
>
> b.  Separately to each insured against whom claim is made or 'suit' is brought.

[Id. at 84]

Regarding coverage, the "Insuring Agreement" provides that Continental will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  [Id. at 75]  The Policy further clarifies that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"  [Id.]  These relevant terms are later defined in the following manner:

> 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> . . . .
>
> 'Property damage' means . . . [p]hysical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

[Id. at 86, 87]  There is no dispute in the present case regarding the scope or meaning of the term "coverage territory."

**Policy exclusions**

The Policy provides the coverage explained above, but it also incorporates exclusions to coverage.  The parties contest the application of four of these exclusions:

> k.    Damage To Your Product
>
> 'Property damage' to 'your product' arising out of it or any part of it.

l.      Damage To Your Work

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.      Damage To Impaired Property Or Property Not Physically Injured

'Property damage' to 'impaired property' or property that has not been physically injured arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in 'your product' or your work'; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

n.      Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection,  repair, replacement, adjustment, removal or disposal of:

(1)  'Your product';

(2)  'Your work'; or

(3)  'Impaired property';

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

[Id. at 78-79]  Continental contends that each of these exclusions operate to preclude coverage in the present case.

Continental further asserts that not only do the exclusions apply to preclude coverage, but also that the terms of the Policy do not cover the circumstances of GSI's claim.  Specifically, Continental argues that under the terms of the Policy, Hale's faulty construction does not constitute an "occurrence" and that the resulting deficiencies in the paving are not "property damage."  The Court first addresses the extent of the Policy's coverage and then considers the application of the exclusionary language.

## C.    Coverage Terms

Many courts have addressed the meaning of the terms "occurrence" and "property damage," in the context of a standard commercial general liability policy.  See New Hampshire Ball Bearings v. Aetna Cas. & Sur. Co., 43 F.3d 749, 752 (1st Cir. 1995); French v. Assurance Co. of Am., 448 F.3d 693, 703 (4th Cir. 2006); Lyerla v. AMCO Ins. Co., 536 F.3d 684, 688 (7th Cir. 2008); Dewitt Const. Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1133-34 (9th Cir. 2002);  Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1143 (10th Cir. 2005);  U.S. Fid. & Guar. Co. v. Advance Roofing & Supply Co., Inc., 163 Ariz. 476, 479-80, 788 P.2d 1227, 1230-31 (Ct. App. 1989); Gen. Sec. Indem Co. of Arizona v. Mountain States Mut. Cas. Co., 205 P.3d 529, 534-35 (Colo. Ct. App. 2009); City of Beverly Hills v. Chicago Ins. Co., 668 F.Supp. 1402, 1406 (C.D. Cal. 1987); R.N. Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co., 686 N.E.2d 160, 164-65 (Ind. Ct. App. 1997); Pursell Const., Inc. v. Hawkeye-Security Ins. Co., 596 N.W.2d 67, 70-71

(Iowa 1999); <u>Auto-Owners Ins. Co. v. Home Pride Cos., Inc.</u>, 268 Neb. 528, 533, 684

N.W.2d 571, 576 (2004); <u>McAllister v. Peerless Ins. Co.</u>, 124 N.H. 676, 679-80, 474 A.2d

1033, 1036 (N.H. 1984); <u>ACUITY v. Burd & Smith Const., Inc.</u>, 2006 ND 187, ¶ 14, 721

N.W.2d 33 (N.D. 2006); <u>Heile v. Herrmann</u>, 136 Ohio App.3d 351, 353-54, 736 N.E.2d

566, 568 (Ohio App. 1 Dist 1999); <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v.</u>

<u>Commercial Union Ins. Co.</u>, 589 Pa. 317, 335-36, 908 A.2d 888, 899 (2006); <u>Traveler's</u>

<u>Indem. Co. of Am. v. Moore & Assocs., Inc.</u>, 216 S.W.3d 302, 306 (Tenn. 2007)

(<u>Moore</u>); <u>Lamar Homes, Inc. v. Mid-Continent Gas Co.</u>, 242 S.W.3d 1, 4 (Tex. 2007)

(<u>Lamar</u>);  <u>Nationwide Prop. & Cas. v. Comer</u>, 559 F.Supp.2d 685, 691-92 (S.D. W.Va.

2008); <u>Kaltchhaler v. Keller Const. Co.</u>, 224 Wis.2d 387, 397, 591 N.W.2d 169, 173 (Ct.

App. 1999).  Although these courts came to vastly different conclusions regarding the

proper application of these common policy terms, in each case, the factual circumstances

of the claim predominated the analysis.  Thus, the Court considers each policy term in its

own fact-specific context.

     Beginning with the question of "property damage," Continental contends that the

damage to the asphalt is not "property damage" because "[i]t is undisputed that J.R.

Hale's asphalt pavement turned out exactly as J.R. Hale created it."  [Doc 21 at 14]

Further, Continental maintains that the asphalt did not "suffer injury" but instead, "was

created in a condition that did not meet the specifications of the contract between J.R.

Hale and GSI."  [<u>Id.</u>]  GSI responds that it is only necessary "to look at the . . . photos

taken at [the jobsite] after J.R. Hale completed its work to conclude that there was

physical injury to tangible property, and thus property damage as defined in the CGL policy." [Doc 27 at 19]  In the present context, the Court concludes that "property damage" cannot be given so literal a meaning as Continental urges is appropriate. Common sense dictates that Hale did not apply rutted and cracked asphalt.  Instead, the asphalt changed over a short period of time and developed manifestations of the latent defects.  As a result, the asphalt suffered physical injury to tangible property, and there was therefore "property damage."

Turning to the second part of the analysis, the Policy defines "occurrence" as an "accident," but  does not define "accident."   The New Mexico Supreme Court has held that "[w]henever the word 'accident' is not defined in the insurance policy, "the word must be interpreted in its usual, ordinary and popular sense." Vihstadt v. Travelers Ins. Co., 103 N.M. 465, 466, 709 P.2d 187, 188 (1985) (considering a health insurance policy exclusion).  The Vihstadt Court went on to describe an accident as "an event occurring without design or purpose, or unintentionally on the part of the assured" and "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." Id.  In Vishtadt, the Court rejected any "distinction between accidental means and accidental results." Id. at 467, 709 P.2d at 189.  Specifically, the Court affirmed that "[i]f there was no accident in the means, there was none in the result, for the two [are] inseparable. . . . There was an accident throughout, or there was no accident at all." Id. (alterations in original) (internal quotation marks and citation omitted).  The Court further stated that "[an a]ccident is never present when a deliberate

act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death." Id. (internal quotation marks and citation omitted).

GSI identifies the "accident" as Hale's "negligent failure to pay attention to detail when ordering asphalt from a batch plant," as well as Hale's "negligent failure to pay close attention to the thickness of the asphalt being applied." [Doc 27 at 19] For support, GSI cites cases that embrace the notion that an accident can be defined by an unintended result. See Moore, 216 S.W.3d at 308-09; Lamar, 242 S.W.3d at 8-9; American Family Mutual Insurance Co. v. American Girl, Inc., 2004 WI 2, 268 Wis.2d 16, 673 N.W.2d 65 (American Girl). New Mexico law, however, does not recognize a deliberate act as an accident unless an "additional, unexpected, independent, and unforeseen" event occurred to cause the injury or damage. Vihstadt, 103 N.M. at 467, 709 P.2d at 189. While there is no dispute that Hale deliberately ordered and applied that asphalt, GSI has offered no evidence of an unexpected or unforeseen intervening event. Id.; see Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1163 (10th Cir. 2007) ("Summary judgment follows when a moving party points to the absence of factual support on an element essential to the non-movant's case, and on which the non-movant bears the burden of proof at trial.").

GSI relies on King v. Travelers Ins. Co., 84 N.M. 550, 505 P.2d 1226 (1973), in which the Supreme Court of New Mexico considered whether damage caused by a ruptured water line was covered by a home owner's insurance policy that insured against "loss caused by accidental damage." Id. at 552, 505 P.2d at 1228. The King Court

determined that "an insurance policy designed to compensate for damages suffered by 'accidental means' is no less effective when the damages result from negligence." Id. at 553, 505 P.2d at 1229.  More specifically, "[i]f the water line was negligently installed this does not preclude the 'accident' from  coverage . . . under the policy." Id.  In King, therefore, the New Mexico Supreme Court concluded that a negligent act—faulty installation—does not preclude the resulting accident—burst pipes—from coverage. Notably, King does not hold that negligent installation alone constitutes an accident. Indeed, the burst pipes satisfy Vihstadt's requirement of an intervening "unexpected, independent, and unforseen" event.  In the present case, there is no equivalent to the burst pipes.

GSI also offers Computer Corner to support the proposition that the insured's state of mind dictates whether an incident is an "occurrence" under the Policy.  Specifically, GSI argues that because the Policy includes a "Separation of Insureds" provision, the Policy should be applied to GSI as if GSI were the only insured.  Accordingly, GSI contends that the cracks, ruts, and pavement shoves were defects that were not intended by GSI, and therefore, that damage was "accidental."  As this Court has previously observed, New Mexico courts have held that unanticipated damage alone cannot create an accident, but instead that "[i]f there was no accident in the means, there was none in the result." Vihstadt, 103 N.M. at 467, 709 P.2d at 189.  As has been explained, GSI has not demonstrated that there was an "accident in the means."  Put another way, by turning the analysis around and identifying itself as the sole insured, GSI remains unable to identify

an intervening event—not a deliberate act—that resulted in property damage.  GSI's
reliance on the "Separation of Insureds" provision simply falls back on the already-
rejected notion that if the outcome of an action is unintended, the action constitutes an
"accident."

Further, Computer Corner does not address the meaning of an "occurrence."  In
that case, a customer brought a damaged computer to a computer repair company.  2002-
NMCA-054, ¶ 2.  The customer testified that he instructed a particular salesman to back
up certain files on the computer.  Id. ¶ 10.  The files were not backed up and were lost.
Id.  The district court focused on the technician who reformatted the hard drive and who
actually lost the files, and the court determined that the loss of the files was intentional,
and not accidental—the technician knew that his actions would result in the loss of data.
Id. ¶ 11.  The New Mexico Court of Appeals disagreed and concluded that the salesman's
failure to communicate to the technician that certain files had to be backed up "was as
much a cause of the loss of the data as the volitional acts of the particular technician who
reformatted the hard drive."  Id.  Neither the salesman nor the technician intended for the
data to be lost; the data was lost as a result of miscommunication or carelessness.  Id.
GSI offers Computer Corner to establish that based on the "Separation of Insureds"
provision, it is GSI's state of mind—and not Hale's—that should be considered.
Computer Corner does not address the meaning of a "Separation of Insureds" provision.
Instead, the Computer Corner Court highlighted the provision in order to make clear that
the computer repair company, and not the technician, "was 'the insured' whose state of

mind was at issue." Id. ¶ 11.  This Court has determined that in the present case, there was no accident by any party, only a deliberate act by Hale.

Based upon the foregoing analysis, this Court finds that Hale's order and application of the asphalt was a deliberate act and that there is no evidence proffered of an intervening unexpected event, which would transform the deliberate act into an accident. Accordingly, although "property damage" resulted from the improper mixture and application of asphalt, there was no "occurrence" to trigger coverage under the Policy.

The foregoing conclusion that GSI's claim is not covered under  the policy puts to rest any further arguments by the parties with respect to the policy.  However, if the Court would have held to the contrary (that there was an "occurrence"), the applicability of the policy exclusions would be dispositive.  The Court, therefore, elects to continue its analysis for the sake of completeness, because the matter of exclusions was briefed by the parties.

**D.    The Policy Exclusions**

Before the Court considers each exclusion's terms, GSI's related argument regarding to the "Separation of Insureds" provision must be evaluated.  Many of the exclusions are phrased in terms of "you" and "your."  For example, exclusion k explains that "'[p]roperty damage' to 'your product' arising out of it or any part of it" is not covered by the Policy.  [Id. at 78-79]  As has been set forth, the Policy includes "preamble" language, which states that "the words 'you' and 'your' refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a

Named Insured under this policy."  [Id. at 75]  GSI contends that it qualifies as a "Named Insured" under the Policy and further, that because the Policy applies "as if each Named Insured were the only Named Insured," the exclusions should be read as if the terms "you" and "your" refer to GSI.  Thus, GSI argues that the example of exclusion k should be read to exclude "'[p]roperty damage' to '[GSI's] product' arising out of it or any part of it."

New Mexico courts have not yet considered the import of a "Separation of Insureds" provision in this context.  Nevertheless, the terms of the Policy demonstrate that GSI's argument is misplaced.  GSI first appears to argue that it was under the impression that it would be "named" as an insured.  This assertion has no basis in the Policy.  In order for GSI to be a "Named Insured," it would have to "qualif[y] as a Named Insured" under the Policy.  GSI has coverage under the Policy according to the following endorsement:  "Section II is amended to include as an insured any person or organization . . . (called an additional insured) whom you are required to add as an additional insured on this policy under a written contract or written agreement . . ."  [Id. at 115]  Thus, based on the language of the Policy, GSI is an "additional insured"—and not a "Named Insured."

Nevertheless, GSI cites Marathon to support its conclusion that the Policy  applies to GSI as an additional insured in the same manner that the Policy applies to a "Named Insured."  [Doc 24 at 15]  In Marathon, Steel Structures, Inc. (SSI) contracted with Marathon Ashland Pipe Line (MAPL).  243 F.3d at 1234-35.  As part of the service

contract, SSI acquired a liability insurance policy with Maryland Casualty Company (Maryland) and named MAPL as an additional insured.  Id. at 1235.  During the contract, MAPL requested that SSI hire a particular temporary employee.  Id.  The employee was badly injured on the job.  Id.  After various claims were filed, the employee filed suit against MAPL, and MAPL requested a defense from Maryland, based on the liability policy.  Id.  Maryland did not acknowledge the request until MAPL filed suit against Maryland, requesting a declaratory judgment on the issue of coverage.  Id. at 1235-36. The district court granted summary judgment to Maryland.  Id. at 1236.

On appeal, Maryland argued that "the policy's use of 'you' makes it clear that named insureds and additional insureds are provided different coverage."  Id. at 1240-41. Specifically, Maryland maintained that the term "'you' refers only to the named insured, whereas 'insured' refers to all other insureds under the policy."  Id. at 1241.  For support, Maryland relied on language that is identical to the preamble language in the Policy before the Court.  See id.  Our Tenth Circuit Court of Appeals, applying Wyoming law, concluded that "the use of 'you' in the policy is ambiguous as to whether it refers to additional insureds and, as such, must be interpreted in their favor."  Id.  In the Marathon policy, the endorsement that added MAPL as an additional insured simply stated that "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule."  Id.  This amendment, the Marathon Court stated, added MAPL "as an 'insured,' and [did] not relegate it to a lesser status than named insureds under the policy."  Id.

Although the Preamble language in the Policy currently before the Court is identical to that in Marathon, the current Policy contains additional language that was apparently not a part of the Marathon policy. In the present Policy, in addition to amending Section II to "include as an insured any . . . organization . . . whom you are required to add as an additional insured on this policy," the endorsement also limits the coverage provided to the additional insured in the following manner:

> That person or organization is an additional insured solely for liability due to your negligence specifically resulting from 'your work' for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

[Doc 54-3 at 115] I do not highlight this provision in order to apply this specific limitation of coverage to the parties before the Court. Instead, the language of the limitation clearly demonstrates that the Policy differentiates between "you" and "your" and an "additional insured." This limitation does not make sense if the "additional insured" is substituted for "you" and "your," as GSI contends should be done. GSI's version would read as follows:

> The person or organization is an additional insured solely for liability due to the [additional insured's] negligence specifically resulting from the [additional insured's] work for the additional insured which is the subject of the written contract or written agreement.

GSI's version is not a reasonable interpretation of the Policy. Reading the Policy in this manner impermissibly creates ambiguity. See Sanchez v. Herrera, 109 N.M. 155, 159,

783 P.2d 465, 469 (1989) (explaining that New Mexico courts "will not find ambiguity unless the contract is reasonably and fairly susceptible of different constructions" (internal quotation marks and citation omitted)).

Further, the New Mexico Supreme Court has acknowledged that "the terms 'named insured' and 'insured' are not synonymous, the latter being a broader category which encompasses the former." Konnick v. Farmers Ins. Co. of Arizona, 103 N.M. 112, 114, 703 P.2d 889, 891 (1985). In Konnick, the "named insured" was specifically designated on the face of the policy and the "insured" was defined to include the "named insured," the spouse of the "named insured," and others. Id. So too here, the "Named Insured" is specifically defined as "shown in the Declarations" or otherwise "qualifying as a Named Insured under this policy." [Doc 54-2 at 75] An "insured" is defined in Section II and encompasses not only "you"—the Named Insured—but also other people or entities related in some way to the Named Insured. [See id. at 81 ("If you are designated in the Declarations as . . . [a]n individual,  you and your spouse are insureds")] GSI was added under Section II, as an additional insured. Thus, GSI falls into the general category of  "insured," but there is no indication in the Policy terms that GSI falls into the narrower category of "Named Insured."

Thus, this Court is operating in a different analytical context than was our Tenth Circuit in Marathon when it applied Wyoming law.  Here, New Mexico law specifically differentiates between "Named Insureds" and "insureds".  In addition, the Policy language demonstrates an intent to refer to "Named Insureds" or "you" separately from

the "additional insured."  Cf. Marathon, 243 F.3d at 1242 (distinguishing a Wyoming state case based on different policy language and determining that the "entire policy, read as a whole, is ambiguous as to whether this language differentiates an additional insured . . . from a named insured").  While GSI contends that the Policy is ambiguous because it does not explain how coverage under the Policy is different "as between Named Insureds and Additional Insureds,." [Doc 24 at 22] reading the Policy as a whole, and substituting only the designated Named Insured for "you," it is apparent that there *is no difference in coverage* between categories of insureds.  Hale, as the Named Insured, has exactly the same coverage for the same events that GSI can claim as an additional insured.

In the coverage section, the Policy explains that "[w]e will pay those sums that *the insured* becomes legally obligated to pay . . . ." [Doc 54-2 at 75 (emphasis added)]  The Policy does not limit coverage to sums that "you" become obligated to pay.  Relevant to this dispute, the terms "you" and "your" come into play only with regard to exclusions from coverage.  For example, no insured can recover for "property damage" to the "Named Insured's" product arising out of it or any part of it.  [Id. at 78]  Put another way, no insured—GSI or Hale—can recover for property damage to Hale's product.  GSI's coverage is the same as Hale's.  See Liberty Mut. Ins. Co. v. Travelers Indem. Co., 78 F.3d 639, 642 (D.C. Cir. 1996) ("Apart from whatever defenses Liberty may have against Smithy Braedon, it is not disputed that Smithy Braedon qualifies as an additional insured under the policy that Liberty issued to First Church. As such, it has the same rights to a defense and indemnity as First Church (but no more)."); 9 Lee R. Russ & Thomas F.

Segalla, <u>Couch on Insurance</u> § 126:7 (3d ed. 2009) ("The additional insured's interest in the policy is regarded as coextensive with that of the named insured, unless the policy includes a severability of interests clause.  Accordingly, the additional insured enjoys the full benefits of the policy, despite any restrictions contained in a separate contractual agreement with the insured, as well as being subject to all policy exclusions." (footnotes omitted)).

Although the Policy states that a "Named Insured" can be otherwise qualified (apart from designation on the declarations page), there is no indication in the Policy that any other person or entity was so qualified.  GSI was included in the Policy as an additional insured and no portion of the Policy indicates that it was entitled to any other status.  GSI contends that this reading of the Policy effectively eliminates the coverage that the Policy purports to offer, but,  as was demonstrated above, that is not the case.  GSI is entitled to coverage that is identical to Hale's coverage.  Accordingly, the Court finds (1) that GSI is not a "Named Insured" under the Policy, (2) that the "Separation of Insureds" provision therefore does not require that the Court consider GSI to be the only Named Insured,  and (3) that the terms "you" and "your" do not refer to GSI, but instead to Hale, the only Named Insured under the Policy.  With that as background and context, the Court turns next to the individual exclusions.[1]

---

[1]  The Court is aware of the New Mexico Court of Appeals' opinion in <u>Computer Corner</u>, which addressed some of the specific exclusions discussed below.  That Court concluded that the language in the exclusions was "too vague and indefinite to be enforceable."  2002-NMCA-054, ¶ 21.  The Court was careful, however, to limit its holding to the facts of that case.  <u>Id.</u> ("We therefore hold that under the facts of this case, Section II.H.1.(n) of the policy is too vague and

**1.      Exclusion k**

Exclusion k explains that the Policy does not cover "property damage" to Hale's product.  In addition to the "Separation of Insureds" argument that was addressed above, GSI argues that this exclusion does not apply because the Policy defines "your product" to exclude "real property."  GSI, relying on a case out of Minnesota, contends that the asphalt is "real property" and therefore, not Hale's "product."  [Doc 24 at 16]  In another context, the New Mexico Court of Appeals considered the scope of the term "real property" and determined that the term includes structures, fixtures, and improvements.  Mannick v. Wakeland, 2005-NMCA-098, ¶ 19, 138 N.M. 113, 117 P.3d 919.  This explanation comports with Black's Law Dictionary, which defines "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land."  Black's Law Dictionary 1337 (9th Ed. 2009).  Under either the Mannick or Black's definition, the asphalt paving constitutes "real property."  The asphalt is certainly an "improvement," Mannick, 2004-NMCA-098, ¶ 19, and the asphalt was also "attached to" the land.  See Black's Law Dictionary at 1337.  Accordingly, Hale's "product," the asphalt paving, falls into the "real property" exception and damage to the asphalt is therefore not precluded  by exclusion k.

**2.      Exclusion l**

Exclusion l precludes recovery for "property damage" to "your work arising out of

---

indefinite to be enforceable.").  This Court deems it necessary to consider the exclusionary language in light of the facts of the present case.

it or any part of it. . . ."  [Id. at 78]  "Your work" is defined by the Policy to mean "[w]ork or operations performed by you or on your behalf."  [Id. at 87]  GSI relies on its contention that "you" and "your" refer to "GSI."  Thus, GSI maintains that the exclusion does not apply because there has been no "property damage" to GSI's work.  This argument has already been rejected by this Court.

GSI also contends that exclusion l's subcontractor exception allows GSI to recover for the deficient asphalt work.  The subcontractor exception states the following: "[Exclusion l] does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  [Id.]  This exception generally "provides that any damages arising out of the work performed by a subcontractor fall outside the 'exclusion' and are covered under the CGL."  Moore, 216 S.W.3d at 310.  GSI insists that because Hale was a subcontractor to GSI, this exception permits recovery.  The scope of the term "your," however, continues to control the analysis.  The subcontractor exception clearly applies to damages that arise from work "performed on *your* behalf by a subcontractor."  [Id. (emphasis added)]  Thus, this exception applies to permit recovery for work that is performed on behalf of the "Named Insured"—Hale—by a subcontractor.  See Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Liberty Mut. Ins. Co., 234 Fed.Appx. 190, 194 (5th Cir. 2007) ("Because the contract defines 'you' as American Pipe, the exception applies when someone else does work as American Pipe's subcontractor, not when American Pipe is a subcontractor.").  This Court therefore finds that the language of the exclusion applies to Hale's "work" and that the subcontractor

exception to the exclusion does not apply because Hale did not hire a subcontractor to perform the work.

As a result, exclusion l precludes recovery for property damage to Hale's work and therefore operates to prevent GSI from recovering under the Policy for damage to the asphalt paving.

**3       Exclusion m**

Under exclusion m, an insured may not recover for "property damage" to "impaired property" arising out of "[a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'"  [Id.]  "Impaired property" is defined by the Policy as

> tangible property, other than 'your product' or 'your work,' that cannot be used or is less useful because . . . it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous . . . or . . . [y]ou have failed to fulfill the terms of the contract or agreement."

[Id. at 85]  This exclusion, on its face, has no application to the present situation.  There is no dispute that the only property damage at issue is damage to the asphalt paving—to Hale's work.  There is no "impaired property" as defined by the Policy because "impaired property" is "property, other than . . . 'your work.'"  [Id.]  Therefore, the Court finds that exclusion m does not preclude coverage.

**4.       Exclusion n**

The final exclusion at issue prevents recovery, in relevant part, for

[d]amages claimed for any loss or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . 'your work' . . . if such . . . . work . . . is withdrawn or recalled from the market or from use by any person because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

[Id. at 78]  GSI contends that this language is designed only to exclude "the costs of  . . . a general recall, as opposed to the costs of correcting a specific, known defect."  [Doc 24 at 18]  Because there has been no general recall in the present case, GSI maintains that exclusion n has no application.  [Id. at 18-19]  Typically, this exclusion is applied "to shield insurers from liability for the costs associated with unanticipated product recalls, and does not apply to claims involving losses resulting from the failure of the insured's product or work, when there is no evidence of a general recall of similar products or materials from the market place."  Auto-Owners Ins. Co. v. Rhodes, 682 S.E.2d 857, 871 (S.C. Ct. App. 2009).

Considering the normal use of this exclusion, Continental's application of this language to the facts at hand is awkward at best.  Continental's theory is that the Policy excludes recovery for the expense incurred for the removal and replacement of Hale's work because the asphalt has been withdrawn from use because of a known inadequacy in the asphalt.  [Doc 21 at 21]  At the same time, exclusion n could reasonably be read to exclude only the cost of repair for work that has not yet been "withdrawn."  See 9A Couch on Insurance, § 130:12 (3rd ed. 2009) ("Opinion is divided as to whether the "sistership exclusion" is to be applied literally so as not to exclude damages arising out of

withdrawal or replacement of the item in which the defect is originally discovered."). By way of example, if a defect is found in a particular soda bottle, exclusion n could either apply (1) to preclude recovery for the cost of repairing the particular soda bottle that is known to be defective *and* recalling all of the soda bottles already in the market that have not yet demonstrated the particular defect or (2) to preclude recovery *only* for the cost of the recall of soda bottles that have not yet been determined to be defective.

In the present case, the argument boils down to this:  there is no concern that there is undetected asphalt that has been applied but that has not yet been determined to be defective.  Thus, exclusion n applies to this case only if the first interpretation of exclusion n—recovery is precluded for the *known* defects as well as for the *anticipated* defects—is the only reasonable reading of the language.  Both interpretations, however, are reasonable readings of the Policy language.  Accordingly, the Court finds that exclusion n is ambiguous, and therefore, exclusion n could not be enforced to preclude recovery for GSI in the event that coverage initially existed  See Ponder, 2000-NMSC-033, ¶ 26; Levenson v. Mobley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987) (holding that a contract is ambiguous if it is fairly susceptible to different constructions).

## III.   CONCLUSION

No genuine issues of material fact exist in the current controversy with respect to the question of liability under the Policy.  In the absence of an "occurrence," the Policy does not cover GSI's claim.

**IT IS THEREFORE ORDERED** that *Continental Casualty Company's Motion*

*For Summary Judgment On Coverage* [Doc 20] is **GRANTED**, *Plaintiff's Motion For Partial Summary Judgment On The Issue Of Coverage* [Doc 23] is **DENIED**, and Plaintiff's *Request For Oral Argument On Cross Motions For Summary Judgment* [Doc 37] is **DENIED**.

      **SO ORDERED** this 31st day of March, 2010, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge